VINCENT J. AIELLO, ESQ.
Texas Bar No. 24094081
GREENSPOON MARDER, LLP
3993 Howard Hughes Parkway Ste. 400
Las Vegas, Nevada 89169
Direct Dial (702) 978-4255
Direct Fax: (954) 333-4285
E-Mail: vincent.aiello@gmlaw.com
Attorneys for Plaintiff Dr. Mark Barry

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | |
|---|---|
| Mark Barry, M.D., *an individual*, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> David Henry, Esq. an individual, Gray Reed ) <br> & McGraw LLP, DOES I through V and ) <br> ROE BUSINESS ENTITIES I through V, ) <br> inclusive, ) <br> ) <br> Defendants. ) | Civil Action No.: 1:19cv458 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Dr. Mark Barry (hereinafter "Dr. Barry" or "Plaintiff") by and through his attorneys of record, Vincent J. Aiello, Esq., of Greenspoon Marder, LLP, complain and allege against Defendants David Henry, Esq., ("Attorney Henry" or "Henry") and Gray Reed & McGraw LLP ("the Firm") as follows:

## JURISDICTION AND VENUE

1. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

2. This is a diversity action brought under 28 U.S.C. § 1332.

3. Diversity jurisdiction is proper as Dr. Barry is a resident of Las Vegas, Nevada, and, at all relevant times herein, Defendant David Henry, Esq. and the Firm are residents of Texas and engaged in business in Texas.

4. As outlined below Plaintiff's damages in this matter are excess of $75,000.00, excluding interest and costs.

5. Upon information and belief, the claims asserted in this case arose from acts and events taking place prior to and during the litigation of Case No.: 1:14-cv-00104, *Barry v. Medtronic* (the "Medtronic litigation") in the Federal District Court in the Eastern District of Texas.

6. These acts include, but are not limited to, the fact that the Firm breached duties owed to the Plaintiff while representing him as legal counsel, failed to comply with all professional obligations and standards applicable to the Firm as required by the alleged contingency fee agreement as well as rules governing attorney conduct generally, and fraudulently induced Plaintiff to enter into a contingency fee agreement despite the fact that Defendants knew they were precluded from representing Plaintiff as trial counsel.

7. Further, Defendants falsely promised Plaintiff that they could serve as trial counsel to litigate his lawsuit against Medtronic. The Firm made deliberate misrepresentations to Plaintiff and the Court concerning Henry and the Firm's involvement in prosecuting Plaintiff's patents which formed the basis of Plaintiff's claims against Medtronic. These deliberate misrepresentations caused the Court to disqualify Defendants from the case which resulted in damages to the Plaintiff.

8. In this action, the majority of the sources of proof, including party and non-party witnesses such as the Defendants records and the information related to the suit, are all located in the state of Texas.

9. Plaintiff contends that the true names and capacities, whether individual, corporate, associate, co-partnership, or otherwise of Defendants DOES I through V and/or ROE BUSINESS ENTITIES I through V, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names.

10. Plaintiff is informed, believes and thereon alleges that each of the Defendants designated as DOES I through V and/or ROE Business Entities I through V are responsible in some manner for the events and happenings referred to in this action and proximately caused damages to the Plaintiff as herein alleged. The legal responsibility of those Defendants arises out of, but is not limited to, their status as attorneys and counselors providing legal services to the Plaintiff which Defendant(s) were under the control and supervision of the Firm operating at the time of the events giving rise to the claims in an agency, master/servant or joint venture relationship with the named Defendants.

11. Plaintiff will ask leave of this Honorable Court to amend this Complaint to insert the true names and capacities of the fictitiously named Defendants together with the proper charging allegations against them if and when they are ascertained.

12. All Defendants are jointly and severally liable.

13. In accordance with 28 USC § 1391(b)(2) venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## NATURE OF THE ACTION

14. David Henry, Esq., is an attorney currently working at Gray Reed & McGraw LLP. David Henry was Dr. Barry's principal patent attorney for approximately 12 years. Both Mr. Henry and the Firm hold themselves out as patent law and litigation specialists.

15. During 2004, Dr. Barry hired Attorney Henry to prosecute what would later become patents '358, '072, and '121 described below.

16. The patents were prosecuted, Attorney Henry and the Firm represented to Plaintiff that they could negotiate licensing agreements with non-party medical device distributor Biomet.

17. Upon information and belief, in the course and scope of this representation, Attorney Henry negligently failed to include a critical "marking requirement" provision in Dr. Barry's

3

Biomet licensing agreement. The inclusion of this marking provision is standard practice and its necessity is common knowledge for any patent attorney.

18. Attorney Henry's failure to include this provision reduced the amount of damages Dr. Barry could obtain in the *Barry v. Medtronic* law suit Civil Action No.: 1:14-cv-104 as well as other related matters due to the impact "marking" has on predicate elements of patent infringement claims. Plaintiff contends Attorney Henry and the Firm are liable to Dr. Barry for these losses which are, at minimum, in the millions of dollars.

19. On or about February 18, 2014, Dr. Barry filed suit against Medtronic Inc. alleging that it infringed on patents '358, '072, and '121. Around May and June of 2013, David Henry and Jim Reed arranged meetings with Plaintiff wherein Defendants represented to Plaintiff that the firm was "best suited" to serve as trial counsel and to litigate his claim against Medtronic as trial counsel, with Attorney Henry as the lead trial lawyer.

20. Attorney Henry knew or should have known that his involvement and original prosecution of patents '358, '072, and '121 was so extensive that it would create an unresolvable conflict of interest which would disqualify the Firm from serving as trial counsel in the Medtronic case.

21. During the course of the Medtronic litigation Judge Clark expressly found a conflict existed under Texas Rule 3.08 and other comparable rules of professional conduct. The court found the Firm and Henry misrepresented these facts to the court and ultimately disqualified the Firm and Attorney Henry from serving as trial counsel. *See generally* Dckt 73 Case 1:14-cv-00104-RC Barry v. Medtronic attached as Exhibit **"A"**.

22. Upon information and belief, around May and June 2013 the parties negotiated Plaintiff's possibility of hiring the Firm to litigate the Medtronic lawsuit. During those negotiations, Attorney Henry misrepresented to Plaintiff that Henry and the Firm were able to serve as lead trial counsel in the Medtronic litigation. These misrepresentations were made prior to and at the time Defendants presented Plaintiff with the alleged engagement agreement.

GREENSPOON MARDER
3993 Howard Hughes Parkway Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4255 Fax: (954) 333-4014

23. Plaintiff was deceived by these statements and relied on these statements to his detriment. At the time Plaintiff entered into the purported contingency fee agreement with the Firm, Defendants were charged with analyzing and considering the impact their past scope of representation would have on the Medtronic litigation under Texas Rule of Disciplinary Conduct 3.08.

24. Henry and the Firm induced Plaintiff to retain them knowing that they had a high probability of being disqualified from the Medtronic litigation because they would, as Judge Clark noted, likely be essential, even crucial witnesses offering testimony in the prosecution of Plaintiff's Medtronic infringement action.

25. When asked by Judge Clark if Henry had handled the application and prosecution of the patents at issue in the Medtronic litigation, Attorney Henry lied about his involvement and avoided filing a true or corrected response with the Court for over a year. Id. at p.16 footnote 4.

26. In the Medtronic litigation, Judge Clark stated that Henry and the Firm's conduct amounted to efforts to "hide the ball" before and during the trial. (*See* Dkt. 444, p. 14, n. 6.). Specifically, Judge Clark noted that "even though Mr. Henry was also going to be a key witness in the case" the Firm represented minimal involvement in the patents' prosecution which necessitated disqualification.

27. Upon information and belief, Henry and the Firm knew of the advocate-witness conflict of interest prior to entering into the Agreement and, yet, attempted to conceal the issue and risks thereby deceiving Plaintiff and the court.

28. Ultimately, after winning his lawsuit against Medtronic, the court significantly limited Dr. Barry's enhanced damages award by 80% despite the jury's finding of willful infringement. Additionally, the court declined his request for $5,532,762.00 in attorney's fees due to Henry and the Firm's misconduct during the course of Medtronic litigation.

29. Based on the foregoing Plaintiff has filed this civil action, asserting claims for recovery against the Defendants.

# FACTUAL ALLEGATIONS

## I. Attorney Henry's Involvement in the Original Patent Prosecution

30. Attorney Henry was Dr. Barry's principal patent attorney for approximately 12 years.

31. In 2004, Dr. Barry hired Attorney Henry to prosecute three patents which would later become patents '358, '072, and '121.

32. Attorney Henry was extensively involved in the preparation and prosecution of Dr. Barry's patents prior to the Medtronic litigation. Henry's involvement includes but is not limited to the following:

**'358 Patent Prosecution:**

    **a.** Drafting and filing the original application on December 30, 2004.

    **b.** Drafting and filing an information disclosure sheet on January 3, 2006.

    **c.** Drafting and filing a petition for revival, stating in it that "[Attorney Henry is] the Attorney for U.S. Patent Application No. 11/202,409" on September 11, 2008.

    **d.** Resolving '358 patent issues on or around March 2, 2010.

    **e.** Filing and signing a certificate of correction on August 6, 2012.

**'072 Patent Prosecution:**

    **f.** Drafting and filing the original application on August 10, 2005.

    **g.** Filing a petition for revival, stating in it that "[Attorney Henry is] the Attorney for U.S. Patent Application No. 11/202,409" on September 10, 2008.

    **h.** Drafting and signing arguments made in amendment on September 10, 2008.

    **i.** Resolving patent issues on or around August 17, 2010.

    **j.** Filing a change of address form on August 22, 2013.

GREENSPOON MARDER
3993 Howard Hughes Parkway Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4255 Fax: (954) 333-4014

**'121 Patent Prosecution**:

    **k.** Filing an amendment canceling and amending various claims on January 16, 2012.

    **l.** Requesting a continuing examination and information disclosure sheet on June 27, 2012.

    **m.** Labeling himself as "Attorney, Agent, or Firm" on the front page of the patent in connection with patent issues concerning "Katarzyna Brozynski" on January 29, 2013.

    **n.** Remained the only listed "Attorney/Agent" on the patent on the "Patent Application Information Retrieval" portal at the USPTO website as of August 13, 2015. See generally Order on Motion to Disqualify Dckt [73]

33. Upon information and belief, Attorney Henry was so entwined in the prosecution of patents '358, '072, and '121 that he took Dr. Barry's case with him as he lateraled from law firm to law firm. For instance, Henry started prosecuting Dr. Barry's patents while working at Patton Boggs, but transferred the matter to the Dykema Firm when he began working there in 2011. Likewise, Attorney Henry then took Dr. Barry's matters with him to Gray Reed & McGraw LLP for further prosecution.

34. Attorney Henry's work and involvement with Patents '358, '072, and '121 was extensive. It was clear that he would need to offer testimony and evidence in the Medtronic litigation. In short, it would be impossible for Henry to forget or fail to realize that he ran a high risk of being disqualified from the Medtronic case.

35. Because Henry and the Firm had extensive involvement in prosecuting the patents they knew or should have known they would be unable to serve as trial counsel per the Firm's alleged contingency fee agreement.

## II. The Licensing Agreement

36. Upon information and belief while working for the Firm, Attorney Henry served as counsel to negotiate and draft a licensing agreement for Dr. Barry with non-party Biomet which would permit Biomet to manufacture and sell patents '358, '072, and '121.

37. As an experienced patent and transactional lawyer, Attorney Henry knew that a critical aspect of Dr. Barry's licensing agreement would be to include a "marking requirement" provision.

38. Defendants were aware Title 35 of the United States Code precludes recovery for patent infringement if a patented invention is not adequately marked to notify the public of the patent. Accordingly, Henry was aware Dr. Barry's Biomet licensing agreement needed a "marking requirement" provision to protect Plaintiff's ability to recover monetary damages for patent infringement.

39. Upon information and belief, Attorney Henry knowingly failed to include a "marking requirement" provision in Dr. Barry's licensing agreement which adversely impacted the damage award in the Medtronic litigation.

40. Plaintiff's actions for patent infringement have been hindered in amounts exceeding millions of dollars because his invention was not adequately marked.

## III. The Medtronic Litigation

41. Subsequent to Attorney Henry and the Firm rendering patent prosecution services, Plaintiff commenced an action against Medtronic Inc. alleging Medtronic infringed on patents '358, '072, and '121. Upon information and belief, Defendants pressed Plaintiff to retain the Firm and Attorney Henry as lead trial counsel in the Medtronic civil action.

42. As an experienced patent attorney and litigator, Attorney Henry knew or should have known that under Texas law he could not serve as trial counsel in Dr. Barry's case because of Henry's wide-ranging involvement in the prosecution and licensing of Plaintiff's patents.

43. Under Texas Disciplinary Rules of Professional Conduct 3.08. Henry and the Firm, were "**obligated by this Rule to consider the possible consequences of those dual roles for both the lawyer's own client and for opposing parties."** *Id.*(emphasis added)

44. Specifically under Rule 3.08:

(a) **A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client**…

The comments to the Rule state:

1. A lawyer who is considering accepting or continuing employment in a contemplated or pending adjudicatory proceeding in which that lawyer knows or believes that he or she may be a necessary witness **is obligated by this Rule to consider the possible consequences of those dual roles for both the lawyer's own client and for opposing parties.**

7. Apart from these four exceptions, sub-paragraph (a)(5) **recognizes an additional exception based upon a balancing of the interests of the client and those of the opposing party.** In implementing this exception, it is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. For example, sub-paragraph (a)(5) requires that a lawyer relying on that sub-paragraph as a basis for serving as both an advocate and a witness for a party give timely notification of that fact to opposing counsel. That requirement serves two purposes. First, it prevents the testifying lawyer from creating a substantial hardship, where none once existed, by virtue of a lengthy representation of the client in the matter at hand. Second, it puts opposing parties on notice of the situation, thus enabling them to make any desired response at the earliest opportunity. *See* TX ST RPC Rule 3.08. (emphasis added)

45. Both Henry and the Firm expressly agreed to abide by the Texas Rules of Professional Conduct in the purported contingency fee agreement. These rules explicitly prohibit a lawyer from serving as trial counsel under the facts and circumstances of this case.

46. Upon information and belief, Attorney Henry had actual knowledge that he would or should be conflicted out of litigating the Medtronic lawsuit considering his extensive role as Plaintiff's patent and transactional counsel.

47. The Firm, as a law firm and employer of Attorney Henry, knew or should have known that Attorney Henry would be conflicted out of litigating the Medtronic lawsuit as trial counsel.

48. Prior to and during the Medtronic litigation, neither the Firm nor Attorney Henry advised Dr. Barry of Rule 3.08's implications.

49. Rather, during the May and June 2013 time frame, Attorney Henry postured himself as counsel best suited to litigate Dr. Barry's infringement claim against Medtronic.

50. Attorney Henry's misrepresentations and omissions to his client concerning the advocate-witness conflict violated the fiduciary duties that he owed to Dr. Barry. Further, upon information and belief, Defendants representations induced Dr. Barry to hire the Firm to litigate the Medtronic lawsuit.

### IV. The Medtronic Case Management Conference

51. In virtually every patent litigation case, the court inquiries into whether trial counsel previously prosecuted any patents at issue.

52. Upon information and belief, Attorney Henry knows this because he holds himself out as a patent prosecution and patent litigation specialist. This is outlined in his firm website biography page where it states he has engaged in patent litigation in the past and answered such questions before.

53. Moreover, Attorney Henry was fully aware the court would inquire into his role in prosecuting Plaintiff's patents as Henry had been subject to these sorts of inquires in past patent litigation. The Medtronic court noted as such stating "Mr. Henry has appeared in at least one prior conference where he was asked these very questions. *See* Reporter's Transcript of Case Management Conference at 9:16-25, *Pressure Products Medical Supplies, Inc v. Greatbatch LTD*, No. 9:06- cv-00121-RC (E.D. Tex. Jan. 4, 2007) (ECF No. 18)" Exhibit "A" at p. 21 footnote 8.

54. Predictably, on June 16, 2014, the court asked Attorney Henry at the Medtronic case management conference whether he prosecuted patents '358, '072, and '121 or whether counsel would "otherwise be a potential witness at trial."

55. Attorney Henry made deliberate misrepresentations to the court, stating that he had only "minor involvement early on" in the patent prosecution and that he and the Firm remained eligible to try the case.

56. On May 26, 2015, almost an entire year after the case management conference, Attorney Henry finally filed an amended disclosure detailing his extensive involvement in prosecuting patents '358, '072, and '121.

57. The court then disqualified the Firm and Attorney Henry from handling the Medtronic case as trial counsel.

58. In its Disqualification Order, the court found that Attorney Henry purposefully mislead the tribunal, knew of the advocate-witness conflict of interest at the outset of the case, and that the difficulties incurred by Dr. Barry due to the disqualification "could have been avoided by an accurate answer to the court's questions at the case management conference, or a prompt correction of the inaccuracy." *See* EFC [73] Order on Motion to Disqualify the Law Firm at pg. 18. Exhibit **"A"**.

59. As a result of the Firm's grossly negligent disqualification, Dr. Barry was required to hire new trial counsel to litigate the Medtronic lawsuit.

60. The court disqualified the Firm from litigating the Medtronic lawsuit because it violated the professional rules of conduct which prohibit advocate-witness conflicts of interest.

61. Consequently, the Firm did not satisfy its obligations under the purported contingency fee agreement and is liable for damages alleged herein.

**V.    The Enhanced Damages Findings**

62. Ultimately Dr. Barry retained alternate counsel to litigate and try the Medtronic lawsuit.

63. On November 11, 2016, the jury found in favor of Dr. Barry finding that Medtronic willfully infringed on Dr. Barry's patents and awarded Dr. Barry $20,346,390.00, which was later

reduced to $17,721,180.00 on January 1, 2017. *See* EFC [411] (Jury Verdict Form); EFC [442] at 20–22 (Order Regarding Defendant's Motion for Judgment as a Matter of Law)[1].

64. Because the jury found that Medtronic's conduct was willful and deliberate, Dr. Barry was permitted to move for "enhanced damages" under 35 U.S.C. § 284 and attorney's fees under 35 U.S.C. § 285. Dr. Barry moved for enhanced damages and $5,532,762.00 in attorney's fees. Medtronic opposed both motions.

65. In its order on enhanced damages, the court recognized that it was authorized to double or even treble Dr. Barry's damages, which would come out to a theoretical total award of approximately $35,442,360.00 or $53,163,540.00 respectively.

66. But, the court limited Dr. Barry's enhancement award to 20% in part due to the Firm's deliberate misrepresentations and disqualification, stating that Attorney Henry concealed his conflict of interest and attempted to "hide the ball" from the court. *See* EFC [444] at 14. Exhibit **"C"**.

67. And, based in part on the Firm's deliberate misrepresentations, the court completely denied Dr. Barry's request for attorney's fees.

68. Consequently, the Defendants are directly and proximately responsible for limiting Dr. Barry's enhanced damage awards and attorney fee recovery resulting in an estimated loss of well over $10,000,000.00.

69. Based upon the foregoing Plaintiff asserts the following causes of action in this matter:

**FIRST CAUSE OF ACTION**
**(Negligence as against all Defendants)**

70. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

---

[1] Since that time the Medtronic litigation has been stayed pending appeal per the trial court's Order approving the stay pending execution of the judgment against Medtronic pending resolution of appeals (Dkt. # 457). Medtronic was also granted an extension of time to file a Petition for Writ of Certiorari to the United States Court of Appeals for the Federal Circuit. *See* **Exhibit "B"**.

GREENSPOON MARDER
3993 Howard Hughes Parkway Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4255 Fax: (954) 333-4014

71. The Firm and Henry had a duty to competently represent Dr. Barry as reasonably prudent legal counsel. This includes the obligation to comply with the Texas rules of professional conduct and Texas law.

72. In Texas, a law firm that holds itself out as practicing in a specialized field is held to an higher standard: it is expected to possess a higher degree of skill and learning than a general practitioner and may be held to a correspondingly higher standard of care. Henry and the Firm held itself as a specialist in patent law and, consequently, is held to a higher standard of care.

73. Defendants breached the standard of care when it promised to serve as trial counsel and litigate Dr. Barry's case against Medtronic despite the glaring advocate-witness conflict under Texas law.

74. Defendants failed to inform Dr. Barry of the conflict, violated the rules of professional conduct by deliberately lying to the trial court, were disqualified from the Medtronic civil action, and upon information and belief failed to include a "marking requirements" in Dr. Barry's Biomet licensing agreement.

75. The Firm's negligent conduct proximately caused the loss of millions of dollars in enhanced damages and attorney's fees. It also precluded Plaintiff from pursuing various patent infringement claims because his licensing agreement failed to comply with 35 U.S.C. § 287's marking requirement.

76. The harm caused by Defendants conduct was foreseeable as the firm knew of the conflicts of interest, had a duty to consider and investigate the conflicts and failed to advise their client or the Medtronic Court of the conflicts.

77. But for the Firm's failure to properly assess and communicate its conflict of interest to Plaintiff resulted in an estimated loss of well over $10,000,000.00 in enhanced damages and $5,532,762.00 in attorney's fees.

78. But for Defendants failure to include a marking requirement in Dr. Barry's Biomet licensing agreement, Dr. Barry would have been permitted to pursue additional patent damages against Medtronic and other infringers.

79. Because of Defendants conduct Defendants are liable for Dr. Barry's attorney's fees and costs incurred while pursuing this cause of action.

## SECOND CAUSE OF ACTION
### (Gross negligence against all defendants)

80. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

81. The Firm's conduct is grossly negligent as it shows a plain and deliberate disregard for obligations owed to the Plaintiff.

82. The Defendants knew that attempting to litigate the Medtronic case as trial counsel and knowingly lying to the court given its advocate-witness conflict entailed an objectively extreme degree of risk that the Firm would be disqualified and that Dr. Barry's damage recovery would be substantially reduced.

83. The Defendants knew that its failure to include a "marking requirement" provision in Dr. Barry's Biomet licensing agreement would cause an extreme degree of risk for Dr. Barry, considering the high probability that the licensee would distribute his product without the required patent marking causing damage to the Plaintiff.

84. Upon information and belief the Defendants were aware of its conflict of interest and the negative implications for Plaintiff, failed to balance the interests of their client when Defendants could reasonably foresee Henry would probably be a witness at trial.

85. These deliberate lies and omissions caused Dr. Barry to lose well over $10,000,000.00 in enhanced damages and over $5,000,000.00 in attorney's fees.

86. Defendants remains liable for Dr. Barry's attorney's fees and costs incurred while pursuing this cause of action.

**THIRD CAUSE OF ACTION**
**(Breach of Contract as against Defendants)**

87. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

88. Defendant allegedly entered into a contingency fee agreement (the "Agreement") under which the Defendants would represent Dr. Barry as trial counsel in the Medtronic litigation.

89. At all relevant times, Dr. Barry performed and met all of his obligations under the purported contingency fee contract for the Medtronic litigation.

90. Specifically, the Agreement stated in Clause 2 that the "Firm's obligations are to pursue the Claims in United States District Court of Firm's choosing, or such other jurisdictions or forums as mutually agreed, with diligence and to comply with all professional obligations and standards applicable (the "Firm's Obligations").

91. GRM breached both obligations by violating the Texas law and Rules of Professional Conduct when it took on the Medtronic case was disqualified from serving as trial counsel for cause. Defendants conduct resulted in a breach of the terms of the alleged Agreement.

92. Plaintiff suffered a reduction and loss in damages as well as attorney's fees awarded in the Medtronic litigation.

93. Defendants are liable for Plaintiff's attorney's fees and costs incurred while pursuing this cause of action.

**FOURTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty as against all Defendants)**

94. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

95. The Defendants, as legal counsel, owed Plaintiff fiduciary duties to Plaintiff in the prosecution of the Medtronic litigation.

96. As a fiduciaries the Defendants owed Plaintiff the duties of loyalty, good faith, strict integrity and accountability, and fair and honest dealing. The Defendants were strictly prohibited

from concealing its prohibition from serving as trial counsel from their client and using the attorney client relationship with Plaintiff for their own benefit.

97. The Defendants failed to act in the best interest of Plaintiff when it failed to adequately assess and communicate the implications of its advocate-witness conflict of interest and avoided disclosing this conflict to the Plaintiff and the Court prior to and during the litigation

98. The Defendant breach of the Fiduciary duties owed to Plaintiff proximately caused Plaintiff a reduction in his damage award, a reduction in any enhanced damages and loss of attorney's fees.

99. Under Texas law, a lawyer who breaches his fiduciary duty owed to his client forfeits his compensation. Therefore, the Defendants are precluded from recovering any fees from Plaintiff.

100. Defendants conduct has damaged Plaintiff and he is entitled to attorney's fees and costs incurred while pursuing this cause of action.

**SEVENTH CAUSE OF ACTION**
**(Negligent Misrepresentation as against all Defendants)**

101. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

102. Upon information and belief during all relevant time periods, Defendants falsely and negligently represented to Plaintiff among other claims that they were "legal counsel best suited to litigate and serve as trial counsel" in the Medtronic litigation.

103. The Defendants failed to exercise reasonable care and competency in obtaining or communicating Defendants pre-existing conflicts it had and the inability to serve as trial counsel to Plaintiff in the Medtronic litigation.

104. Dr. Barry suffered damages justifiably relying on the Defendant's misrepresentations which include the limitation of damages awards and loss of attorney's fees in connection with his lawsuit against Medtronic as such Defendants are liable for Plaintiff's damages.

105. Given Defendants conduct Plaintiff is entitled to recover its attorney's fees and costs incurred while pursuing this cause of action.

### EIGHTH CLAIM FOR RELIEF
### (Fraud and Fraudulent Inducement as against all Defendants)

106. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

107. Upon information and belief the Defendants fraudulently induced Plaintiff to enter into a contingency fee agreement by making deceiving representations during negotiations between Plaintiff and the Defendants which took place in May-June of 2013 when Attorney Henry stated he could serve as trial counsel in the Medtronic litigation, was one of the attorneys "best suited to serve as trial counsel to handle the Medtronic litigation" even though he knew he had been extensively involved in applying for, prosecuting and licensing Plaintiff's patented works.

108. Further during this time frame and after the Medtornic litigation commenced Defendant Henry and the Firm made numerous representations to Plaintiff that they could and would be able to present Plaintiff's case as trial counsel in such a way as to maximize Plaintiff's recovery.

109. Plaintiff contends Texas law imposes a duty to abstain from inducing another into a contract through the use of fraudulent misrepresentations.

110. Contracts that are created due to fraudulent inducement are void ab initio. Defendant's statements were in clear conflict of Texas law and the rules of professional conduct.

111. Consequently, the Defendants are liable to the Plaintiff for damages.

112. Defendants are responsible and liable for Plaintiff's attorney's fees and costs incurred while pursuing this cause of action.

### NINTH CAUSE OF ACTION
### (Declaratory Relief as to Defendant Grey, Reed & Mcgraw)

113. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

114. The State of Texas has adopted the Uniform Declaratory Judgments Act, which permits parties to a contract to submit the question of their respective rights under the contract to the Court for a declaration thereof.

115. At this time, a justiciable controversy exists between the parties in this action over the validity, interpretation and enforceability of the arbitration provisions of the Defendant Grey, Reed & Mcgraw Contingency Fee Agreement.

116. What is more, Plaintiff contests the validity and enforceability of the arbitration provision under the contingency fee agreement. In particular, the arbitration provision is invalid because it violates the Texas Arbitration Act, the provision as drafted and in the context of this Complaint is unconscionable, is one sided and illusory, was procured by fraud, and without the assistance of counsel in violation of Texas law.

117. The arbitration provision is unconscionably one-sided because it allegedly permits the Firm to withdrawal from representing Dr. Barry at any time and to collect fees and costs outside of arbitration. Contrastingly, it attempts to force Plaintiff to arbitrate any claim he could possibly have against the Firm. Because this provision is so one-sided as to give GRM a figurative escape parachute from arbitration and the damages suffered by Plaintiff in the Medtronic case generally, it is void.

118. Moreover, the arbitration provision violates the Texas Arbitration Act. Under Section 171.002 of the Act, an arbitration agreement binds an action for malpractice only if: (1) each party to the claim, on the advice of [independent] counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney. The Firm failed to advise Dr. Barry to obtain independent counsel to review the provision and they made assurances to him no such counsel was necessary to review the Agreement. Consequently, it is unenforceable.

119. Dr. Barry requests the Court to determine the legal rights and duties of the parties under the alleged arbitration provision.

120. Defendants are responsible and liable for Plaintiff's attorney's fees and costs incurred while pursuing this cause of action.

### Tenth Cause of Action
### (Vicarious Liability - Respondeat Superior)

121. Plaintiff realleges and incorporates by this reference all previous paragraphs as though fully set forth herein.

122. At all times relevant herein, Attorney Henry was employed by the Firm when he agreed to litigate Dr. Barry's case against Medtronic. Attorney Henry was also working for the Firm when he negligently licensed Dr. Barry's patent. During those instances. Defendant Henry was under Defendant Grey Reed & Mcgraw's direct supervision, employ and control when he committed the wrongful acts alleged in this Complaint. Defendant Henry engaged in this conduct while serving as counsel to Plaintiff while employed at the firm.

123. Consequently, the Firm is vicariously liable for all of Attorney Henry's negligent and fraudulent conduct concerning his representation of Dr. Barry under the doctrine of respondeat superior.

124. Consequently, the Defendant Grey Reed & Mcgraw is liable to the Plaintiff for damages.

125. Further, Defendants are responsible and liable for Plaintiff's attorney's fees and costs incurred while pursuing this cause of action.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mark Barry prays for judgment against Defendant as follows:

1. An award of all damages recoverable under the laws of the United States and the laws of the State of Texas in an amount to be proven at trial by jury;

2. For exemplary and punitive damages, in an amount to be determined at trial;

3. For prejudgment interest as allowed by law;

4. Declaratory relief as to the validity and enforceability of the alleged Arbitration provision in the Agreement;

5. For attorney's fees, expert witness fees and all costs incurred in the defense and prosecution of this matter as special damages pursuant to FRCP 9(g);

6. For all costs of suit incurred in this action;

7. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that all issues so triable be determined by a jury trial.

DATED this 25th day of September, 2019.

GREENSPOON MARDER LLP

By: */s/Vincent J. Aiello*
VINCENT J. AIELLO, ESQ.
Texas Bar No. 24094081
3993 Howard Hughes Pkwy, #400
Las Vegas, NV 89169
*Attorneys for Plaintiff*

GREENSPOON MARDER
3993 Howard Hughes Parkway Suite 400
Las Vegas, Nevada 89169
Tel: (702) 978-4255 Fax: (954) 333-4014