EXHIBIT A

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARK BARRY, M.D., | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION No. 1:14-cv-104 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| MEDTRONIC, INC., | § | BRC |
| | § | |
| *Defendant*. | § | |

## ORDER ON MOTION TO WITHDRAW AND SUBSTITUTE LEAD COUNSEL AND MOTION TO DISQUALIFY THE LAW FIRM

Before the court are Plaintiff's "Opposed Motion to Withdraw and Substitute Lead Counsel" (Dkt. # 51) and Medtronic's "Defendant's Motion to Disqualify the Gray Reed Law Firm" (Dkt. # 54). Mr. Henry is a member of the Gray Reed firm and is currently listed as "Lead Attorney" for this case. He was extensively involved with prosecution of the patents in suit, and, to a lesser extent, so were at least three other Gray Reed attorneys.

Mr. Henry is an important, perhaps crucial, witness regarding a public use bar under 35 U.S.C. § 102(b) and inequitable conduct. The court concludes that he may not participate as trial counsel. Evidently Plaintiff agrees as it has moved to remove him as counsel.

The court also finds that if other Gray Reed attorneys serve as trial advocates the jury will be confused and Medtronic will be prejudiced. Weighing the various applicable ethical rules in light of the public interest and Plaintiff's rights the court concludes that attorneys from Gray Reed may not serve as trial advocates. The court recognizes that this will cause inconvenience and duplication of work, but Plaintiff had previously retained a second law firm in the case, and has not demonstrated substantial hardship. To reduce inconvenience to Plaintiff, designated

1

Gray Reed attorneys may, subject to any confidentiality order and prosecution bar, serve as general counsel and assist at trial so long as they do not address the jury or question witnesses. Likewise, they may also participate in the court's upcoming *Markman* hearing and other hearings not held before a jury.

## I.     Background

Dr. Barry is the owner of the three patents in dispute, U.S. Patent Nos. 7,670,358, 7,776,072, and 8,361,121.  Each patent bears the same title, "System and Method for Aligning Vertebrae in the Ameliorating of Aberrant Spinal Column Deviation Conditions."  Figures 1 through 6 of these patents are identical, and the specifications are highly similar.  Figure 7 of the '072 and '121 Patents are also identical.

The '358 Patent was the first of the three patents to be filed, on December 30, 2004.  The '121 Patent was the last of the three to issue, on January 29, 2013.  Mr. Henry admits to writing the original applications for the '358 Patent and the '072 Patent.  (Dkt. # 60-7, at 1).  At the time of the signing of this order, Mr. Henry and Gray Reed were listed in the "Correspondence Address" for all three patents.[1]

Dr. Barry filed suit on February 18, 2014, alleging that Medtronic infringed the '358, '072, and '121 Patents.  (Dkt. # 1).  The court held a Case Management Conference on June 16, 2014.  Shortly thereafter, the case was stayed pending *inter partes* review.  The court entered an amended scheduling order on May 18, 2015.  (Dkt. # 46).

---

[1] *See* United States Patent and Trademark Office, "Patent Application Retrieval" http://portal.uspto.gov/pair/PublicPair.

2

A.   <u>Mr. Henry was involved throughout the prosecution of Dr. Barry's patents.</u>

According to documents in the publically-available "Patent Application Information

Retrieval" portal at the USPTO website,[2] Mr. Henry was involved throughout the prosecution of

the patents-at-issue.  This activity includes the following:

**'358 Patent Prosecution**

| Date | Filing |
|---|---|
| December 30, 2004 | Application filed (signed by Mr. Henry).  In an e-mail to Medtronic, Mr. Henry stated that he "drafted the original '026 Application" that eventually issued as this patent.  (Dkt. # 60-7, at 1). |
| January 3, 2006 | Information Disclosure Sheet filed (transmittal form signed by Mr. Henry). |
| September 11, 2008 | Petition for Revival filed (signed by Mr. Henry).  In the "Declaration" section of a letter signed by Mr. Henry, Mr. Henry stated, "I am the Attorney for U.S. Patent Application No. 11/202,409." |
| March 2, 2010 | '358 Patent issues |
| August 6, 2012 | Certificate of Correction filed (signed by Mr. Henry). |

**'072 Patent Prosecution**

| Date | Filing |
|---|---|
| August 10, 2005 | Application filed (signed by Mr. Henry).  In an e-mail to Medtronic, Mr. Henry stated that he wrote the application that eventually issued as this patent.  *See* (Dkt. # 60-7, at 1). |
| September 10, 2008 | Petition for Revival filed (signed by Mr. Henry).  In the "Declaration" section of a letter signed by Mr. Henry, Mr. Henry stated, "I am the Attorney for U.S. Patent Application No. 11/202,409." |
| September 10, 2008 | Arguments made in amendment (signed by Mr. Henry). |
| August 17, 2010 | Patent issues. |
| August 22, 2013 | Change of address (signed by Mr. Henry). |

**'121 Patent Prosecution**

| Date | Filing |
|---|---|
| August 16, 2010 | Application filed (NOT signed by Mr. Henry). |
| January 16, 2012 | Amendment canceling and amending claims (signed by Mr. Henry). |
| June 27, 2012 | Request for Continuing Examination and Information Disclosure Sheet (signed by Mr. Henry). |

---

[2] *See* United States Patent and Trademark Office, "Patent Application Retrieval" http://portal.uspto.gov/pair/PublicPair.

3

| January 29, 2013 | Patent issues with "David G. Henry" and "Katarzyna Brozynski" listed as "Attorney, Agent, or Firm" on the front page of the patent. |
| August 13, 2015 | As of this date, Mr. Henry is the only "Attorney/Agent" listed for this patent under the "Patent Application Information Retrieval" portal at the USPTO website.[3] |

Additionally, on August 11, 2011, a "Petition to Withdraw Attorney or Agent" was filed for all three patents. The Petition reads in part: "The client, Dr. Mark A. Barry, specifically requested all files to be transferred to Mr. David Henry, Dykema Firm, 1717 Main Street, Suite 4000, Dallas, Texas 75201." The petition also contains a letter, dated February 23, 2011, signed by Dr. Barry, addressed to the head of IP at Patton Boggs, which reads:

> Thank you for your firm's participation in serving our legal needs these past few years. As you know, David Henry has been my patent attorney many years now. Because Mr. Henry has relocated to the Dykema firm, we would like for all of our files to be transferred to him. His Texas offices are located at 1717 Main Street, Suite 4000; Dallas, Texas 75201.
>
> Because our files include ones relating to on-going matters, we would appreciate your seeing to the prompt transfer of these files so that all relevant deadlines may be met.

At the time that this Order was written, the "Patent Application Information Retrieval" portal at the USPTO website listed "Gray Reed & McGraw, P.C." in the "Correspondence Address" section for all three patents.

In addition to the three patents that have issued, on October 5, 2012, Dr. Barry filed a continuing patent application No. 13/645,589 (the "'589 Application"). The specification of the '589 Application is virtually identical to that of the '121 Patent and contains the same seven figures as the '072 and '121 Patents. The face of this application lists Mr. David Henry and

---

[3] *See* United States Patent and Trademark Office, "Patent Application Retrieval" http://portal.uspto.gov/pair/PublicPair.

Ms. Katarzyna Brozynski as attorneys.  At the time that this Order was written, the application stood rejected for failure to perfect priority.  But prosecution appears to be ongoing, as evidenced by the fact that Mr. Henry's law firm, Gray Reed, continues to submit Information Disclosure Sheets relating to the '589 Application.

B.     <u>Mr. Henry told the court that he was only involved "at the outset" of prosecution.</u>

On February 18, 2014, Dr. Barry filed suit against Medtronic, alleging infringement of the '358, '072, and '121 Patents.  (Dkt. # 1).  Mr. David Henry of Gray Reed was listed as the original attorney of record.  (Dkt. # 1).  Between February 2014 and June 2014, four additional Gray Reed attorneys would be added: Mr. James Reed, Mr. Michael Ackal, and Mr. Michael Ellis.  Mr. David Healey and Mr. John Lane of Fish & Richardson were added later (March 9, 2015 and June 24, 2015, respectively).

During a June 16, 2014 Case Management Conference, Judge Clark asked his customary questions regarding whether counsel had been involved in prosecution of the patents-in-suit, or prosecution of possible prior art such as Defendant's own patents, or had drafted a willfulness opinion, or would otherwise be potential witnesses at trial.  The dialogue, which involved Ms. Mary-Olga Lovett (Medtronic's counsel) and Mr. Henry, proceeded as follows:

> THE COURT: Is there anybody on the defendant's trial team that was involved in the prosecution of any of the patents underlying Medtronics' devices at issue?  In other words, what I'm looking for here is to avoid a late filing of a motion to disqualify somebody on your side because your trial team is going to wind up being witnesses somehow.
>
> MS. LOVETT: Not an issue, your Honor.
>
> THE COURT: And anybody on your trial team -- did anybody on your trial team supply any kind of willfulness opinion?
>
> MS. LOVETT: No, your Honor.

THE COURT: All right. And, asking plaintiff, are you aware of anybody on defendant's trial team that either was involved in willfulness opinions or involved in prosecuting these patents . . . ?

MR. HENRY: No, your Honor.

THE COURT: Okay. And let me flip it the other way. Anybody -- I mean, you're here. Any of those issues apply to you, like you're going to be a witness as far as the Barry patent because you prosecuted it or you helped develop it or anything like that?

MR. HENRY: Well, yes, your Honor, I was personally involved initially on the prosecution; and then it was handed over to other attorneys at Patton Boggs when I was there on -- to wrap up the prosecution. But I was involved at the outset.

. . .

THE COURT [to Ms. Lovett]: You need to ask Mr. Henry what information -- I mean, ask him for the information you're going to need. I don't want this coming up a month before trial or two months before trial. I want this dealt with now.

. . .

MS. LOVETT: We will do that, your Honor. There may be a need to get his deposition or at least get an understanding of his position in the process, understanding that that may not bear any fruit in terms of --

THE COURT: I would want that within the next 30 days. You need to be moving forward because, again, it is completely unfair to wait until say Markman and suddenly be raising --

MS. LOVETT: Of course, your Honor.

(Dkt. # 27, at 39:13–42:8).

On June 30, 2014, Mr. Henry wrote an e-mail to Ms. Lovett describing his involvement in the patents-in-suit. He stated that "as of September of 2008, I currently recall only being informed of progress and events, but not actively formulating communications and having interactions with the USPTO." (Dkt. # 60-7, at 1).

Mr. Henry's deposition did not occur until June 10, 2015, due to an agreed motion to extend the original 30-day deadline, and a subsequent 9-month stay of all deadlines pending *inter partes* review.   On May 18, 2015, the court issued a new Scheduling Order, setting June 16, 2015, as the deadline for completing discovery related to the involvement of Dr. Barry's counsel in the patents-in-suit.  (Dkt. # 46).

On May 26, 2015, Mr. Henry signed and submitted to Medtronic "Amended Initial and Mandatory Disclosures."  (Dkt. # 54-12).  In this, he identified himself as "likely to have discoverable information that Dr. Barry may use to support his claims."  (Dkt. # 54-12, at 3).  It further stated that:

> Mr. Henry will also have information relating to the prosecution of his patents, including the disclosure of prior art and the submission of materials and information to the USPTO.  Mr. Henry will also have information on continuing prosecution of applications asserting priority to the original application and later applications from which the patents in suit were ultimately issued.

(Dkt. # 54-12, at 3).

This same document also identified Gray Reed attorney David Lisch as "likely to have discoverable information that Dr. Barry may use to support his claims."  (Dkt. # 54-12, at 3–4).  Mr. Lisch was involved in the prosecution of the patents but is not listed as trial counsel.

On June 10, 2015, Medtronic took a deposition of Mr. Henry.  (Dkt. # 54-1).

On June 23, 2015, Dr. Barry filed an opposed motion to allow withdrawal of Mr. Henry as attorney and to substitute lead counsel.  (Dkt. # 51).  Dr. Barry requested that Mr. Henry be removed as counsel of record and be replaced by Mr. James Reed.  *Id*. at ¶ 1.  Dr. Barry also agreed "to institute an ethical wall as to David Henry and David Lisch relating to confidential information received from Medtronic and working as counsel for Dr. Barry in this lawsuit."  *Id*. at ¶ 5.  The motion also stated that Mr. Henry and Mr. Lisch would "not participate in the

7

prosecution of this case as trial counsel or in assisting with the prosecution of this case as part of the trial team." *Id.*

On June 25, 2015, Medtronic filed "Defendant's Motion to Disqualify the Gray Reed Law Firm." (Dkt. # 54). In this motion, Medtronic stated that it had "recently uncovered misrepresentations and deliberate concealment by [Mr. Henry]" concerning his involvement in the prosecution of the patents-in-suit. *Id.* at 1. Medtronic also stated that it had just learned that Mr. Henry and Mr. Ellis, both attorneys of record in this case, had been involved in the prosecution of the '589 Application. (Dkt. # 54, at 7).

On July 20, 2015, two events took place. First, Medtronic filed an Amended Answer, in which it raised inequitable conduct as an affirmative defense. (Dkt. # 62, at ¶ 108). Second, Dr. Barry filed an Emergency Motion to Compel. (Dkt. # 61). The basis of the motion was that Medtronic sought to block the Gray Reed firm from participating in an upcoming 30(b)(6) deposition of Medtronic employees. According to Medtronic, it did not want to reveal confidential information to the patent prosecution team of a direct competitor.

On July 23, 2015, the court held a hearing regarding Dr. Barry's Emergency Motion to Compel. The parties agreed to have Fish & Richardson conduct the deposition and to enter a protective order to prevent confidential information from being shared with members of the Gray Reed firm. The court also heard arguments regarding Dr. Barry's pending "Opposed Motion to Withdraw and Substitute Lead Counsel" (Dkt. # 51) and Medtronic's pending "Defendant's Motion to Disqualify the Gray Reed Law Firm" (Dkt. # 54).

In ruling on the pending motions, the court will consider the following two issues:

1. Does Mr. Henry's involvement with the prosecution of the patents disqualify him from serving as an advocate at trial?

8

2. If Mr. Henry is disqualified from serving as a witness and as an advocate, does his involvement as a witness, together with his firm's involvement in prosecution of the patents-in-suit, preclude his partners and associates from acting as advocates at trial?

## II. Counsel as Witness and Advocate.

A. <u>The factors to be considered.</u>

The leading Fifth Circuit case on the disqualification of attorneys is *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995). Under *F.D.I.C.*, a court "must weigh the relative merits of each of the various competing disqualification rules as [it] proceed[s] through each successive step of [the] analysis." *F.D.I.C.*, 50 F.3d at 1312. In this case the pertinent disqualification rules are: 1) District Court Local Rules (here, the Local Rules of the Eastern District of Texas ("Local Rules")); 2) Texas Disciplinary Rules of Professional Conduct ("Texas Rules"); 3) ABA Model Rules of Professional Conduct ("ABA Model Rules"); and 4) ABA Model Code of Professional Responsibility ("ABA Model Code"). These ethical rules must be considered in "the light of the public interest and the litigant's rights." *F.D.I.C.*, 50 F.3d at 1312 (quoting *In re Dresser Industries, Inc*., 972 F.2d 540, 544 (5th Cir.1992)). Also, because of the potential for a disqualification motion to be a tool for harassment, where disqualification is sought on the grounds of a conflict of interest or other ethical impropriety, "disqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred." *F.D.I.C.*, 50 F.3d at 1316 (citing *Woods v. Covington County Bank*, 537 F.2d 804, 813 (5th Cir. 1976)).

B.   The likelihood that Mr. Henry will be a witness and the importance of his testimony.

As will be detailed below, it is generally accepted that an advocate in a case may testify about relatively unimportant matters, uncontested issues, and legal fees.  So the court first examines the importance of Mr. Henry's testimony.

There are two overlapping issues that will require Mr. Henry's testimony—a public use bar under 35 U.S.C. § 102(b) and inequitable conduct.  (Dkt. # 62, at ¶¶ 97, 108).  Because the applications for the patents-at-issue were filed before March 16, 2013, the pre-AIA § 102(b) applies.  *See* Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 293 (2011).  Under § 102(b), "[a] person shall be entitled to a patent unless . . . the invention was in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ."  35 U.S.C. § 102(b).  Whether a patent is invalid for public use is a question for the jury.  *See, e.g.*, *Am. Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267–68 (Fed. Cir. 2008).

Public use is an issue in this case that will require Mr. Henry's testimony.  In a Declaration filed on June 17, 2015, Dr. Barry stated that he performed several experiments more than one year prior to the filing of his invention.  *See* (Dkt. # 50-3, at ¶¶ 4–12).  Dr. Barry also stated that the x-ray image depicted in Figure 6 of the '358 Patent was not actually performed with his completed invention.  (Dkt. # 50-3, at ¶ 7).  Rather, "[t]he photograph used as Fig. 6 was mistakenly and inadvertently described as using [Dr. Barry's] invention when, in fact, it only portrayed results achievable through use of [the] invention."  (Dkt. # 50-3, at ¶ 7).  Mr. Henry was responsible for filing this patent application, including Fig. 6.  In connection with the public use bar defense, it is certain that he will be called upon to testify about the source and dates of the photographs and the prosecution of the patents.

10

Medtronic has also raised the defense of inequitable conduct, (Dkt. # 62, at ¶¶ 108–31),

and, in this case, the court will submit this issue to the jury. *See, e.g.*, *Rothman v. Target Corp.*,

556 F.3d 1310, 1322 (Fed. Cir. 2009) (approving of "district courts occasionally delegat[ing]

aspects of the inequitable conduct inquiry to juries"). "To prevail on a claim of inequitable

conduct, the accused infringer must prove . . . by clear and convincing evidence that the

applicant knew of the reference, knew that it was material, and made a deliberate decision to

withhold it." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir.

2011). "[T]he materiality required to establish inequitable conduct is but-for materiality," which

means that "the PTO would not have allowed a claim had it been aware of the undisclosed prior

art." *Id*. at 1291. The accused infringer must "prove that the patentee acted with the specific

intent to deceive the PTO." *Id*. at 1290. Intent and materiality are separate requirements that

cannot be analyzed using a "sliding scale" approach. *Id*.

Medtronic's basis for asserting inequitable conduct is that Dr. Barry failed to disclose two

pieces of prior art to the PTO. *See* (Dkt. # 62, at ¶¶ 108–31). One is an abstract that Dr. Barry

submitted in 2004 for the "International Meeting on Advanced Spine Techniques" ("IMAST").

The second is the presentation that he gave at that meeting. These publications describe

surgeries performed more than a year before the priority date of the '358 Patent. As already

noted, Mr. Henry filed the original applications and signed off on at least two Information

Disclosure Sheets listing prior art for the PTO to consider during prosecution. Because of this,

Mr. Henry will be called to testify as to why the IMAST publications were not presented to the

PTO during prosecution. His testimony will not be cumulative and is not readily obtainable by

other means. The inventor "is not privy to the [patent attorney's] unique knowledge about his

reasons for failing to submit prior art." *Personalized Mass Media Corp. v. The Weather*

11

*Channel, Inc.*, 899 F. Supp. 239, 243 (E.D. Va. 1995). And, Dr. Barry has not argued to the contrary.

In this case, inequitable conduct should be decided by the jury because factual issues regarding public use and inequitable conduct are largely overlapping. The same group of surgeries will form the factual bases for both causes of action. If the jury, for example, agrees with Medtronic that Dr. Barry performed the invention in 2003, then the description of the 2003 experiments in his 2004 IMAST presentation and abstract will likely be considered "material" for the purposes of the inequitable conduct inquiry. The jury could also determine that the 2003 surgeries were experimental in nature, and therefore not material references, which could weigh against a finding of inequitable conduct.

C. Application of ethical guidelines to Mr. Henry and attorneys of the Gray Reed firm.

The Local Rules do not explicitly state circumstances under which an attorney may serve as an advocate and a witness. But the Local Rules do point to the Texas Rules "as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Local Rule AT-2(A). The Local Rules, therefore, incorporate the Texas Rules with regard to an attorney serving as an advocate and a witness.

Texas Rule 3.08(a) provides: "[a] lawyer shall not . . . continue employment . . . if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client." The commentary states that "the **principal concern** over allowing a lawyer to serve as both an advocate and witness for a client is the **possible confusion** that those dual roles could create for the finder of fact." Texas Rule 3.08, cmt. 4. (emphasis added). While such representation may still be permissible with the client's consent, *see* Texas Rule 3.08(b), it will be problematic for an attorney to serve as a witness

where "the lawyer's testimony concerns a controversial or contested matter."  Texas Rule 3.08, cmt. 4.  In such cases:

> combining the roles of advocate and witness can unfairly prejudice the opposing party.  A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others.  It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Texas Rule 3.08, cmt. 4.

ABA Model Rule 3.7(a) contains similar language, stating: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1)     "the testimony relates to an uncontested issue;
(2)     "the testimony relates to the nature and value of legal services rendered in the case; or
(3)     "disqualification of the lawyer would work substantial hardship on the client."

The policy behind ABA Model Rule 3.7(a) mirrors that of Texas Rule 3.08: "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client."  ABA Model Rule 3.7, cmt. 1.  Under the ABA Model Rules, "[t]he tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness" and "[t]he opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation."  ABA Model Rule 3.7, cmt. 2.  Comment 4 to ABA Model Rule 3.7 further states:

> Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.  Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client.  It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

The ABA Model Code also recognizes the dangers of having an attorney serve as both an advocate and a witness.  "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness," unless the testimony relates "to an uncontested matter," "a matter of formality," "the nature and value of legal services," or disqualification of the lawyer "would work a substantial hardship on the client."  ABA Model Code DR 5–101(B).  The policy parallels that of the Texas Rules and ABA Model Rules:

> If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness.  Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case.  An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility.  The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

ABA Model Code EC 5-9.

As discussed above, public use and inequitable conduct are two important issues that will require Mr. Henry's testimony at trial.  The court finds that permitting Mr. Henry to serve as trial advocate and key witness in this case will cause confusion on the part of the jury and is very likely to cause prejudice to Medtronic.

The factual posture of the case and the crucial nature of the issues about which Mr. Henry will testify, analyzed in light of the Local Rules, the Texas Rules, the ABA Model Rules, and the ABA Model Code, weigh very heavily against allowing Mr. Henry to serve as both an advocate and a witness for Dr. Barry.  Mr. Henry has offered to withdraw as trial counsel.  The important issue for the court is whether his partners and associates at the Gray Reed firm may serve as trial advocates.

14

Defendant points to provisions of the various ethical codes and rules that focus on the potential for a conflict of interest with the client. These provisions allow an attorney witness's firm to participate with the client's "informed consent." *See* Texas Rule 3.08(c); ABA Model Rule 3.7(b).

Naturally, Dr. Barry has consented. There is no real potential for conflict in having an experienced advocate like Mr. Henry testify about the reasons that any allegations of public use or inequitable conduct are illusory or based on misunderstandings. Cross examination of an experienced attorney is like questioning a politician about his latest scandal; nailing pudding to the wall is a snap in comparison. The court is not going to disqualify Mr. Henry or his firm because of an alleged conflict with his client. So these "consent" exceptions to conflict provisions, and Dr. Barry's consent, provide only the slightest weight slightly in favor of allowing Gray Reed attorneys to serve as trial advocates. As with the analysis of Mr. Henry's participation as witness and advocate, the important considerations are the potential for juror confusion and prejudice to Medtronic.

This problem is recognized in the Model Code: "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he **or a lawyer in his firm** ought to be called as a witness," unless the testimony relates "to an uncontested matter," "a matter of formality," "the nature and value of legal services," or disqualification of the lawyer "would work a substantial hardship on the client." ABA Model Code DR 5–101(B) (emphasis added). Furthermore, "[i]f a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." ABA Model Code DR 5–105(D). The commentary in the various ethical codes concerning the unfair prejudice and

confusion that can result from participation of an advocate as a witness on important substantial issues also applies in analyzing the participation of the Gray Reed firm as trial advocates.

In the first place this is not, as Mr. Henry told the court at the Case Management Conference, a case where he had some minor involvement early on and then passed the patent prosecution on to the partners of another firm, Patton Boggs.[4]  As detailed in the "Background" section of this Order, Mr. Henry has been Dr. Barry's principal attorney on these patents and taken the work with him as he moved from firm to firm until he arrived at the Gray Reed firm. Gray Reed attorneys worked with him on one patent in suit, the '121 patent, and the Gray Reed firm continues as counsel on a continuing application for a patent not in suit but with an almost identical specification and the same figures as the patents-in-suit.  At least three Gray Reed attorneys in addition to Mr. Henry have been involved in the patent prosecution according to documents that will likely be in evidence.[5]

There is little doubt Mr. Henry will be a key witness on the issues of public use bar and inequitable conduct.  Medtronic will have to attempt to impugn Mr. Henry's credibility and his

---

[4] The Texas Rules state that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal."  Texas Rule 3.03(a)(1).  The version of this rule in the ABA Model Rules is even more demanding, stating that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal **or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer**."  Model Rule 3.3(a)(1) (emphasis added).  "A lawyer owes, to the judiciary, candor, **diligence**, and utmost respect."  Local Rule AT-3(A) (emphasis added).  Taken together, these ethical canons require that an attorney not only display candor by not making false statements of fact or law, but also display diligence in correcting such misstatements.

[5] One such Gray Reed attorney is Mr. David Lisch, who is described as "hav[ing] information regarding the continuing prosecution of applications asserting priority to the original application and later applications from which the patents in suit were ultimately issued."  (Dkt. # 54-12, at 5).  Another such Gray Reed attorney is Mr. David Ellis, who at one point was listed with Mr. Henry and Mr. Lisch as having power attorney for the continuing application.  *See* (Dkt. # 54, at 7 (citing (Dkt. # 54-1 at 44:13–45:2)).  Ms. Katarzyna Brozynski, a Gray Reed attorney, is listed on the '121 patent.

competence, as well as that of the other Gray Reed attorneys who worked on the patent applications.  How can that be seen as anything but an attack on the firm?

Speakers at CLE seminars, especially judges, invariably tell the attorneys that attacking opposing counsel is counter-productive and is likely to result in juror resentment.  The undersigned has tried more than 100 jury trials and in each has gone to the jury room after the verdict, with his law clerk, and asked: "what would you tell this young lawyer to do, or not do, when the clerkship is over and it is time for that first trial?"  In almost every case in which a lawyer has criticized or attacked opposing counsel, at least one juror remarks on the need to be polite to opposing counsel and avoid personal attacks.

Under these circumstances, for these reasons and the reasons outlined in the discussion of Mr. Henry, the court concludes that ABA Model Code DR 5-101(B), the rationale behind Texas Rule 3.08, cmt. 4, and ABA Model Rule 3.7, cmts. 1 and 2 weigh heavily in favor of excluding Gray Reed attorneys as trial advocates to avoid juror confusion and prejudice to Medtronic.

D.    The "substantial hardship" exception.

The ethical canons provide exceptions to the prohibitions against a trial advocate or a member of their firm serving as a witness.  If the testimony concerns a formality, an uncontested issue, or attorney's fees, or if withdrawal would result in a substantial hardship for the client, the attorney may be allowed to serve in both roles.  *See, e.g.*, Texas Rule 3.08(a), ABA Model Rule 3.7(a), & ABA Model Code EC 5-10.

It is clear that Mr. Henry's testimony is important and perhaps crucial to both sides.  So the exceptions for unimportant or uncontested issues do not apply.  But the ethical canons also caution that disqualification should not be allowed where it would work a substantial hardship on the client.  *See* Texas Rule 3.08(a)(5); ABA Model Rule 3.7(a)(3); ABA Model Code EC 5-10.

17

Dr. Barry does not assert that Mr. Henry's withdrawal as counsel will result in substantial hardship for Dr. Barry; Dr. Barry actually filed the motion seeking permission for Mr. Henry to withdraw.

As to whether withdrawal of the Gray Reed firm will result in substantial hardship, the court finds that Dr. Barry is represented by attorneys from a separate law firm, Fish & Richardson. Obviously there will be inconvenience and duplication of effort as Fish & Richardson attorneys take the lead. But to a large extent those are difficulties that could have been avoided by an accurate answer to the court's questions at the case management conference, or a prompt correction of the inaccuracy.

Fish & Richardson is a firm with a national reputation, staffed by attorneys highly experienced in patent litigation and with trial in this court. The *Markman* hearing has not been held and trial is set eleven months in the future. In light of the experience of Fish & Richardson, and since the court is not disqualifying all Gray Reed attorneys from continuing to serve in a "general counsel" role, or at hearings including the *Markman* hearing, the attendant difficulties are greatly minimized. As Dr. Barry has already agreed, certain attorneys involved in prosecution of Dr. Barry's patents, such as Mr. Henry, must be walled off, as is common in software cases, among others. Other attorneys may be present at trial, hearings, or depositions, subject to confidentiality orders and any prosecution bar.

The court finds that Dr. Barry has not demonstrated "substantial hardship," which is the test set out in the various ethical codes. This factor does not weigh strongly against exclusion of Mr. Henry or attorneys of the Gray Reed firm as trial advocates.

Finally, the court must address Dr. Barry's argument that Medtronic delayed taking Mr. Henry's deposition and thus should not be allowed to make this motion. In pointing to

Medtronic's one-year delay in deposing Mr. Henry, Dr. Barry ignores the fact that all deadlines were stayed during Medtronic's pursuit of *inter partes* review of the patents-at-issue. The parties entered first one and then another joint motion to stay deadlines. The case was stayed until April 27, 2015. On May 13, 2015, the parties had a joint status conference to discuss scheduling. On May 18, 2015, the court entered a new scheduling order, setting June 16, 2015 as the deadline for completing discovery related to the involvement of Dr. Barry's counsel in the patents-in-suit. (Dkt. # 46). Mr. Henry was deposed on June 10, 2015. (Dkt. # 54-1).

If Medtronic had sought to depose Mr. Henry during the stay, it could have resulted in a waste of resources and needless attorney's fees for both sides. Medtronic was sufficiently diligent in deposing Mr. Henry under the amended scheduling order that issued on May 18, 2015.

E.    <u>General considerations in addition to the ethical codes.</u>

In addition to considering the provisions of the various ethical codes, the court must balance the societal interest in the right of a litigant to retain counsel of choice with the interest in avoiding juror confusion and prejudice to Medtronic. For the reasons set out above, the court makes the following findings of fact in this regard:

1.    Mr. Henry's testimony is necessary in this case. Defendant has advanced strong positions on the public use bar and inequitable conduct, and Dr. Barry does not dispute that Mr. Henry will be an important witness on those issues.

2.    At least three other attorneys from the Gray Reed firm have been involved in prosecution of the '121 Patent and with a partial continuation application.

3.    At trial, opposing counsel will be entitled to, and of necessity will have to, explore the question of whether Mr. Henry "acted with the specific intent to deceive the PTO" in not

19

revealing the 2004 IMAST publications. *Therasense*, 649 F.3d at 1290. A second topic of examination and cross will be the involvement of Mr. Henry with the inclusion of photographs of allegedly "prior use surgeries" as figures in the patents. Counsel will be entitled to attack Mr. Henry's credibility, and that of the other Gray Reed attorneys involved in prosecution of the '121 Patent and the continuation patent.[6] But this is likely to prejudice the jury against Medtronic.

4. The potential for counsel to cross the line from attacking Mr. Henry to striking at the client over the shoulders of the attorney will be high if Gray Reed attorneys are advocates. After all, the jury will know they are Mr. Henry's partners and a partner's actions are imputed to other partners. Likewise, on at least two important issues Gray Reed attorneys would have to advocate for the credibility and reliability of their partner(s).[7]

5. This court regularly reminds jurors that what attorneys say is not evidence. In this trial that admonition will have to be accompanied by a contradictory caveat about Mr. Henry and his partners and associates who were involved in prosecution, which might appear that the court was vouching for their credibility.

6. The likelihood of juror confusion and prejudice to Medtronic, stemming from the facts found in findings 1 through 5, will be extremely high and the likelihood that these harms can be sufficiently reduced by proper instructions is low.

---

[6] "The credibility of a party's trial counsel . . . should not be an issue in the case." *Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.*, No. A-03-CA-754-SS, 2006 WL 1544621, at *11 (W.D. Tex. May 31, 2006) (describing the problems associated with a law firm serving in the dual role of both advocate and witness). The court is not persuaded by Dr. Barry's arguments that *Crossroads* is inapplicable. It is true that the *Crossroads* judge had previously warned the Morgan & Finnegan firm that it would not be allowed to serve as trial counsel if it were to call its own attorneys as witnesses. But this court raised the same issue at the case management conference.

[7] *See Crossroads*, 2006 WL 1544621, at *10-11.

7.  It will be inconvenient for Dr. Barry to substitute counsel at this point, but Dr. Barry and Mr. Henry made that bed at the Case Management Conference, and if Mr. Henry was surprised by the court's questions, he failed to promptly review his files and notify the court of the true state of facts.  Dr. Barry has not made a showing that any inconvenience rises to the level of a "substantial hardship," especially since Gray Reed attorneys will be allowed to appear at hearings and to assist Fish & Richardson attorneys at deposition and trial.

9.  Dr. Barry had earlier retained Fish & Richardson, a nationally known law firm with a great deal of experience in patent law and familiarity with this court's trial procedures and rules. So while Dr. Barry may not have both firms he chose as counsel, he does have one of them.

10.  On balance, the need to avoid juror confusion and prejudice to Medtronic, and the practical problems inherent in a trial with at least one partner of a law firm being extensively examined and cross-examined concerning his and the firm's involvement in the prosecution of the patent, while other partners serve as advocates, outweighs the societal interest in Dr. Barry's choice of counsel, especially where, as here, Dr. Barry had previously retained another qualified firm for the case.

11.  The court finds that that Medtronic's Motion to Disqualify is not merely a tool for harassment and delay.  Mr. Henry inaccurately stated his involvement with the patents and failed to promptly review his records and correct those misstatements.[8]   When discovery revealed what an important witness he would be, and the involvement of his firm, a motion to disqualify

---

[8] The court's questions on this issue are a standard part of virtually every patent Case Management Conference the court has held so it is doubtful that any well-prepared attorney would be surprised by them.  And, Mr. Henry has appeared in at least one prior conference where he was asked these very questions.  *See* Reporter's Transcript of Case Management Conference at 9:16–25, Pressure Products Medical Supplies, Inc v. Greatbatch LTD, No. 9:06-cv-00121-RC (E.D. Tex. Jan. 4, 2007) (ECF No. 18).

the Gray Reed firm was reasonable.  The fact that the motion is granted only in part is due not to a lack of merit, but to the court's desire to minimize the disruption to Dr. Barry's case.

For basically the same reasons set out in discussing the ethical canons, these findings of fact lead the court to conclude that neither Mr. Henry nor his partners and associates at the Gray Reed law firm should participate as advocates before the jury in the trial of this case.  However, there is little to no risk that participation by Gray Reed attorneys in hearings before the bench will lead to confusion of the fact finder or prejudice to Medtronic.  Subject to a confidentiality order and prosecution bar, the Gray Reed firm may participate in the *Markman* Hearing and serve as general counsel for Dr. Barry, but the Gray Reed firm may not serve as trial advocates.

Medtronic expressed concern about the Gray Reed firm representing Dr. Barry and their having to reveal confidential information about marketing and product development to the prosecution counsel and general counsel of its competitors.  This concern will be largely alleviated by the parties' agreement to enter a joint protective order with an adequate prosecution bar.

Even with these stipulations, the court recognizes that removal of the Grey Reed firm as trial counsel is not a decision to be taken lightly.  To protect the client, courts are reluctant to disqualify an entire firm.  *See F.D.I.C.*, 50 F.3d at 1313 ("Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration.").  For the reasons stated above, under the unique circumstances of the case, the court concludes that exclusion of the Gray Reed firm as trial advocates is necessary.

### III.    Conclusion

Considering the facts in light of the various ethical canons and rules, and the societal interests at stake the court finds that Medronic's motion (Dkt. # 54) is **GRANTED IN PART.**

22

It is therefore **ORDERED** that attorneys of the Gray Reed law firm will not be allowed to appear before the jury in this case as advocates.  That is, they shall not conduct voir dire, opening statement, or closing statements, and shall not question any of the witnesses.  Subject to a protective order, which shall include a prohibition against sharing confidential information with members of the firm who are not properly designated and a prosecution bar, designated attorneys and legal assistants may participate in hearings, including the *Markman* hearing, and may be present at depositions and trial to assist Fish & Richardson trial counsel. Mr. Henry, Mr. Lisch, Mr. Ellis, and Ms. Brozynski shall not be among the attorneys so designated.

It is further **ORDERED** that Dr. Barry's "Opposed Motion to Withdraw and Substitute Lead Counsel" (Dkt. # 51) is **GRANTED IN PART**; Mr. Henry shall withdraw but his partner may not substitute as lead counsel.

So **ORDERED** and **SIGNED** this **14** day of **August, 2015.**

_____
Ron Clark, United States District Judge